(158 App. Div. 712.)

## PEOPLE v. BARNES.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

1. CRIMINAL LAW (§ 878*)—APPEAL—REVIEW—PREJUDICE FROM ERROR.
  Where a criminal case is submitted to the jury on two counts, a conviction cannot stand if the evidence is insufficient to sustain it on either count, as it cannot be known on which count the jury based its verdict.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098–2101; Dec. Dig. § 878.*]

2. INDICTMENT AND INFORMATION (§ 128*)—JOINDER OF OFFENSES—ELECTION.
  Counts in an indictment for common-law larceny and for statutory larceny or embezzlement were not necessarily inconsistent, as the same act might constitute either crime, and hence, where the evidence justified a submission, both counts were properly submitted to the jury.
  [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 403–413; Dec. Dig. § 128.*]

3. LARCENY (§ 3*)—EMBEZZLEMENT (§ 20*)—ACTS CONSTITUTING TAKING.
  The president of a corporation, by withdrawing its funds from the bank in which they were deposited and placing them as its money in a safe deposit box hired for the company in the name of himself and other officers, did not commit larceny, though the funds thereafter were wholly within his control; they having been for all practical purposes equally within his control when on deposit in the bank.
  [Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 3–10; Dec. Dig. § 3;* Embezzlement, Cent. Dig. §§ 22, 23; Dec. Dig. § 20.*]

4. LARCENY (§ 15*)—EMBEZZLEMENT (§ 20*)—SUFFICIENCY OF EVIDENCE.
  Evidence, that the president of a corporation took its money from a safe deposit box in which it had been placed for safe-keeping with the intention of using it for his own purposes, and that he took it to a broker's office and purchased stocks therewith in his own name and for his own account, would support a conviction either for common-law larceny or for statutory larceny, consisting of an appropriation of the funds of another in control of the party appropriating them, and hence counts for both offenses were properly submitted to the jury, since, so far as the charge of common-law larceny was concerned, the evidence as to what the president did with the money indicated the felonious intent with which it was taken.
  [Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 39–42; Dec. Dig. § 15;* Embezzlement, Cent. Dig. §§ 22, 23; Dec. Dig. § 20.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. LARCENY (§ 3*)—EMBEZZLEMENT (§ 20*)—DEFENSES—TAKING UNDER CLAIM OF RIGHT.

Under Penal Law (Consol. Laws 1909, c. 40) § 1306, providing that upon an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly, under a claim of title preferred in good faith, even though such claim is untenable, the president of a corporation who took its funds for his own use was guilty of larceny, though the corporation was indebted to him in an amount approximately equal to, the sum taken, where he did not take it as payment of the indebtedness; no intention to do so accompanying the act itself.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 3–10; Dec. Dig. § 3;* Embezzlement, Cent. Dig. §§ 22, 23; Dec. Dig. § 20.*]

6. CRIMINAL LAW (§ 1170*)—ERROR—CURE.

On a trial for larceny, the district attorney read parts of statements made by accused to the district attorney and to the grand jury. Accused's counsel undertook to read the rest of such statements, which the court of its own motion refused to permit, limiting him to the material parts thereof. Accused thereafter took the stand, and not only attacked the accuracy of such statements as reports of what he had said, but also denied everything therein unfavorable to him. *Held* that, if the court's ruling was improper, it was entirely obviated by accused's testimony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3145–3153; Dec. Dig. § 1170.*]

Appeal from Trial Term, New York County.

Noah E. Barnes was convicted of larceny in the first degree, and he appeals. Affirmed.

See, also, 155 App. Div. 896, 140 N. Y. Supp. 1135.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Henry A. Gildersleeve, of New York City, for appellant.

Robert C. Taylor, of New York City (George Z. Medalie, Deputy Asst. Dist. Atty., of New York City, on the brief), for the People.

SCOTT, J. The defendant was indicted, upon two counts, of the larceny of $30,000, property of the Cottonwood Creek Copper Company. The first count charged common-law larceny in the usual form; the second count charged what is known as statutory larceny, consisting of the conversion or embezzlement of said sum of $30,000, property of the Cottonwood Creek Copper Company. The company whose money is said to have been stolen was organized by defendant for the purpose of taking over certain mining claims or locations situated in Colorado. Nine of these claims were the property of defendant, and two had been his property, but had been abandoned by him in order that they might immediately be relocated by a young German named Von Hochberg, a transaction which in effect amounted to a gift from defendant to Von Hochberg. The history of the events leading up to the acts charged against the defendant as a larceny makes very interesting reading. Von Hochberg, a well-born and well-connected young German, had quarreled with his family over a romantic attachment to the lady who afterwards became his wife. A newspaper article dealing with his reasons for leaving Germany,

and the difficulties he had found after his arrival in this country to earn a livelihood, attracted defendant's attention. He sought the young man out, attached him to his service by an attractive salary, gave him the two mining claims, made him an officer of the copper company when organized, and ultimately sent him to Germany to sell stock of the company. This he did so successfully that in a short time he had sold stock of the par value of $75,000, realizing, after payment of the expenses attending the sale, between $68,000 and $69,000, which were deposited to the credit of the company in the New Amsterdam Bank in the city of New York. At various times prior to October 24, 1907, about half of this sum had been withdrawn, presumably for the uses and business of the company, so that on said October 24, 1907, there stood in the bank to the credit of the company $33,857.49.

Upon the organization of the Cottonwood Creek Copper Company, defendant and Von Hochberg had assigned to that company their eleven mining claims in consideration of the delivery to them of the whole capital stock of the company ($300,000) except a few shares issued to the incorporators. They had then returned to the company $150,000 of the stock, upon the condition that the company should mortgage its property for that amount so that each purchaser of stock should receive as a bonus an equivalent amount in mortgage bonds, and upon the further consideration that when the stock should be sold the proceeds should be divided, one-half being retained by the company, and one-half paid to defendant and Von Hochberg in the proportion of nine-elevenths and two-elevenths. Up to the time of the acts charged as constituting the larceny, defendant had received no part of the proceeds of the stock which had then been sold, and there was due him from the company, as his share of said proceeds, either $30,681.81 or $28,155.94, depending upon the construction to be given to his contract with the company. There is evidence tending to show that at the time defendant himself so construed the contract that he believed himself to be entitled only to the smaller sum. This was the situation of affairs in October, 1907, at which time defendant evidently controlled the company absolutely. He was its president, his son was treasurer, and Von Hochberg, who by that time had assumed the name of Barnes, was the secretary.

Defendant became apprehensive as to the safety of the money on deposit in the New Amsterdam Bank, and on October 24th, with the knowledge and acquiescence of Von Hochberg, he caused his son, the treasurer of the company, to draw two checks upon the New Amsterdam Bank, one for $500, and one for $30,000, and upon them drew the amounts in cash from the bank. He then hired a safe deposit box in the same building in the name of himself, his son, and Von Hochberg (Barnes) and placed the $30,000 in cash therein. On the following day or the day after, still with the knowledge of the other officers of the company, he withdrew the money from the safe deposit box and took it downtown and purchased stocks with it in his own name and for his own account. These stocks he held for some time and subsequently sold at a profit. These facts are substantially un-

disputed. The defendant offered evidence in extenuation and explanation of his acts, and also evidence tending to show that after the purchase of the stocks he had, in form at least, returned the $30,000 to his own custody for the benefit of the company; but all this evidence the jury seem to have disbelieved or disregarded.

The court submitted the case to the jury upon both counts of the indictment, notwithstanding the defendant's frequent motions that the district attorney should be required to elect upon which count he would rely, and that the common-law count of the indictment should be withdrawn from the consideration of the jury. This the defendant assigns as error, and it is to this feature of the case that his argument is chiefly directed.

[1] He insists that, upon any view of the evidence, he could not legally have been convicted of common-law larceny, and says, truly enough, that the case having been submitted to the jury on both counts the conviction cannot stand if the evidence was insufficient to sustain it on either because it cannot be known on which count the jury based its verdict. People v. Sullivan, 173 N. Y. 122–126, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582.

[2] But the two counts are not necessarily inconsistent because the same act sometimes amounts to larceny at common law and also embezzlement under the statute. People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546.

[3] There is ample evidence to justify the conclusion that, when defendant drew the money out of the New Amsterdam Bank and placed it in a safe deposit box, he did so, as he professed at the time, to safeguard it for the company, against the contingency of the bank's failure or suspension, a contingency at that time by no means improbable; that he hired the safe deposit box for the company, and placed the money in it as the money of the company. Up to this he had committed no offense against the company. He had simply taken its money out of one depository which he deemed unsafe, and had put it in another where it was entirely safe. It is true that in doing so he had placed it wholly within his own control; but it is manifest that it had been equally within his control, for all practical purposes, when it was on deposit in the bank, for his control over the other officers of the company was complete. That defendant deposited the money in the safe deposit box as the company's money is shown by a resolution he caused to be inserted in the minutes thanking him for his action in saving the money; by a note or memorandum placed upon the check by which the money was withdrawn from the bank, to the effect that the money was "drawn out of bank on account of money panic to be deposited in the safe deposit"; by a cablegram which he caused to be sent to the German stockholders reassuring them that their money had been protected against the bank panic; and by an entry which he caused to be made on the stubbook. All these acts and declarations are consistent only with the theory that defendant withdrew the money from the bank and put it in the safe deposit box as the company's money. His position then was that the

company's money had, by the action of its officers, been put in a safe place for the security of the company and the stockholders.

[4] It was when defendant, with the intention of using the money for his own purposes, took it out of the safe and carried it to a broker's office to be used in buying stocks, that he committed the larceny; a common-law larceny, because he took it from the possession of its true owner to use for his own benefit; a statutory larceny, because, having been put in a position as an officer of the company whereby he could control its funds, he appropriated the same to his own use. The evidence therefore justified a conviction upon either count of the indictment, and no error was committed in submitting the case to the jury on both counts. So far as the charge of common-law larceny is concerned, the evidence as to what defendant did with the money immediately after he had withdrawn it from the safe deposit box serves to indicate the felonious intent with which he withdrew it.

[5] It is also urged, as a reason for reversing the conviction, that the company was indebted to defendant, at the time of the alleged larceny, in an amount equal or approximate to the sum he took, and hence that he was merely paying himself. The quality of the act is determined by the intent with which it was committed. People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L. R. A. (N. S.) 528, 10 Ann. Cas. 309. If the defendant, when he took the money, had done so openly and avowedly as in payment of a debt due to him, and it had appeared that he had made such a claim to it in good faith, it would have been difficult to uphold a conviction, even if it should appear that he took more than was legally due. Penal Law, § 1306. But nothing of this kind appeared. The evidence is all to the contrary, and so the jury must have considered, for it was fully and fairly instructed on the subject. It is abundantly clear, however, that the pretense that defendant took the money as a payment of any amount due from the company is merely an afterthought, and that no such intention accompanied the act itself.

[6] Defendant had made a statement to the district attorney and to the grand jury, both of which had been taken down in shorthand and transcribed. The district attorney read into the testimony, as admissions, some parts of these statements. Defendant's counsel undertook to read all that had not been read by the district attorney. The prosecution made no objection to this, but the court of its own motion refused to permit it, calling upon the defense to read only what might under the circumstances be material. It may be that a question of some importance would be presented if it appeared that either statement contained anything of real consequence which was thus shut out. It does not so appear from the case on appeal. And even if any injustice had been done by this ruling, it was entirely obviated when the defendant himself took the stand and was afforded the opportunity, of which he availed himself, not only to attack the accuracy of the reports as to what he had said, but also to deny everything appearing therein which seemed to be unfavorable to him.

The charge was a long one covering every phase of the case. There were numerous requests to charge, and, of course, many exceptions

were taken to what was charged, as well as to what was not. We have examined them with care and find no exceptions that would justify us in concluding that full justice was not done to the defendant.

The judgment of conviction must be affirmed. All concur.