George T. WOHLPART, Plaintiff,

v.

COMMERCIAL INSURANCE COMPANY OF NEWARK, N. J., Defendant.

United States District Court
S. D. New York.
Aug. 9, 1960.

McGoldrick, Dannett, Horowitz & Golub, New York City, for plaintiff (Emanuel Dannett, Roger Perry, New York City, of counsel).

Bigham, Englar, Jones & Houston, New York City, for defendant (Alfred J. Morgan, Jr., Joseph A. Kilbourn, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

This diversity action on a fidelity bond brought by the assignee of the liquidators of Farland Corporation, C. A., involves the question whether or no Farland's employee, Elias Gruska, committed the act of larceny or embezzlement of 80,000 bolivares. There appears to be no dispute with regard to the notice of claim or proof of loss or whether they were filed on time.

Farland Corporation, C. A., is a Venezuelan corporation now in liquidation. It was in the business of importing ladies' wear into that country. Defendant issued a policy to Farland indemnifying it against direct loss of money or property through acts of larceny or embezzlement committed by specified employees, including Elias Gruska.

At the time in question Gruska owned 45% of the outstanding stock of Farland and George Farkas owned 55%. Farkas is a shrewd and an experienced businessman and, except for occasional visits to Venezuela, remained in New York where his principal interests are. Gruska was the employee in charge of the operations in Venezuela. The contract of employment between Farland and Gruska dated December 4, 1952, is the epitome of vagueness. By its terms Gruska was required to devote most of his time to the company's business with no provision for salary, commissions or drawings.

In plaintiff's opening statement we were told that Gruska had a drawing account of 500 bolivares a week against his share of the profits. At trial Farkas testified that he objected to Gruska drawing a salary, and whether Gruska continued to draw a salary despite the objections was not proved. It was proved, however, that the corporate bank account was with the Royal Bank of Canada in Caracas and Gruska was authorized to sign the checks. There was some vague testimony that Gruska's only authority was to sign checks for salaries and to pay import duties. We are satisfied, however, that Gruska had complete control of the bank account.

In the summer of 1954 Gruska informed Farkas that the Venezuelan government intended to increase its import duties considerably, and it was agreed that Farland buy a large quantity of goods in anticipation of such increase, dispose of them and then liquidate. On

October 25, 1954, Farkas received a letter from Gruska dated October 20, 1954, reading as follows:

"Please be advised that I am withdrawing the sum of eighty thousand bolivares (Bs 80,000.00) which will be charged to my share in the profits of Farland Corp. This amount is urgently required by me at this time and same will be properly recorded in our books here.

"With best regards."

Farkas testified that immediately upon receipt of the letter he telephoned Gruska at Caracas and told him that he had no right to do what he said he did in the letter—that he was a thief, and to put the money back immediately. He further testified that Gruska told him he needed the money and that he would eventually put it back. About a month or so later Farkas sent one of his associates to Caracas and checked the books of Farland and determined that everything was in order except for the 80,000 bolivares withdrawn by Gruska. It also appears that Gruska made appropriate entry in Farland's books of the withdrawal and signed a receipt for the money, which receipt is also part of the company records and shows that the 80,000 bolivares were to be applied against his share of the profits.

There also is evidence to the effect that the Farland company issued financial statements for September, October and November, 1954, and they each showed a profit. At the time of the withdrawal of the 80,000 bolivares there were only 80,466 bolivares to the credit of the corporation in the bank.

Despite the alleged protest by Farkas, Gruska continued in the employ of the company until the end of the year 1954. Farkas saw Gruska in Venezuela at Christmas time of 1954, and again at Christmas in 1955 and 1956, and each time discussed the return of the money, without success. Farkas never complained to the police and Farland never brought any civil action against Gruska. The notice of claim that was sent to the

defendant states that the larceny was discovered in November, 1954.

Farland's by-laws and the testimony of a Venezuelan lawyer have each satisfied us that a stockholder has no title to a corporation's assets, and the board of directors alone can declare dividends from profits.

Defendant resists the claim, saying that the incident is really a business controversy between two partners and does not involve a loss through larceny or embezzlement as those terms are commonly understood. Both parties agreed that the court should apply New York law.

Under the proof adduced in this case we conclude that the withdrawal by Gruska did not amount to larceny or embezzlement within the contemplation of the parties' contract. In using the terms larceny and embezzlement manifestly, it was intended that the necessary wrongful intent accompany any act of taking by the employees covered. That intent, to entitle plaintiff to a recovery here, must be found in the act of taking and from all the surrounding circumstances in evidence.

Gruska was a 45% owner of the equity of the company that he and his "partner" had decided to liquidate at the end of the year. He was in charge of the operations of the company, devoting most of his time to its success, and his only reward was to be his share of the profits realized. We do not know whether any dividends had been declared for periods prior to the time in question, but it is a fact that none had been declared that would cover the withdrawal complained of. The company had finished its buying activities and the balance of time before its demise was devoted to selling what it had on hand. The dissolution was on the horizon, and with it, the final distribution of profits and capital. Gruska openly withdrew the money and so advised his "partner" by letter the day before, and he openly debited his account as to profits with the company. He claimed to be entitled to the money both before and after the event, and we

find that his claim was made in good faith, and that there was a substantial basis in fact therefor. Cf. Gray v. Employer's Liability Assurance Corp., 10 Dominion Law Reports 369 (Can., 1913). There in fact were undistributed profits on hand at the time. In his reply brief plaintiff states that if there were a distribution of profits at the time Gruska took the money, his share would be approximately 65,000 bolivares. Perhaps he overestimated the amount he was entitled to, but that does not alter the good faith in which he acted (Cf. People v. Barnes, 158 App.Div. 712, 143 N.Y.S. 885), nor supply the wrongful or wilful intent necessary to constitute larceny or embezzlement. See Morissette v. United States, 342 U.S. 246, 272–273, 72 S.Ct. 240, 96 L.Ed. 288. That Gruska's act may have been unauthorized or improper cannot alone impose liability upon the defendant, and assuming it amounted to a conversion, mere conversion was not what was insured against. Else why specify larceny and embezzlement.

In plaintiff's opening statement it was said that Gruska had a drawing account of 500 bolivares a week *against his share of the profits*, although on the trial Farkas testified that subsequent to the decision to buy up and liquidate, Gruska started drawing a salary, and he objected to it. Whether or not Gruska was permitted to draw against his share of profits notwithstanding that that was not formally authorized by the board of directors, would appear to be relevant to a possibility that the parties ran the company as a partnership and did not observe the formalities of a corporation, at least until the alleged defalcation. If they acted as partners there of course would be no question but that the defendant would not be liable. See 17 A.L.R. 982. In any event we hold that plaintiff has failed to establish his case, i. e., failed to prove a loss through larceny or embezzlement, and the complaint must therefore be, and is hereby, dismissed.

This opinion is filed in lieu of findings of fact and conclusions of law.