### PEOPLE v. HART.

(Supreme Court, Appellate Division, First Department.   June 15, 1906.)

1. LARCENY—EVIDENCE—SUFFICIENCY.
     Evidence *held* insufficient to sustain a conviction for larceny of a check.
2. SAME—EMBEZZLEMENT—APPROPRIATION OF PARTNERSHIP FUNDS.
     Where defendant and another agreed to jointly purchase land for speculation, and the other party gave defendant a check with which, together with money to be contributed by defendant, he was to purchase the land, the fact that defendant appropriated the check to his own use did not make him guilty of larceny or embezzlement, if he afterward acquired and paid for the land.
3. SAME—INSTRUCTIONS.
     In a prosecution for larceny of a check, it appeared that the check was given to defendant by one with whom he had agreed to jointly purchase certain land for speculation, and that the check was the contribution of the other party to the fund required to pay for the land.   Defendant converted the check to his own use.   The jury was instructed that appropriation by one partner of money of the firm was not larceny, and one of the jurors then inquired what constituted a partnership between persons who agreed to buy a piece of property together, as defendant and the drawer of the check did.   *Held,* that it was error to refuse to answer this question, and state that instructions on that point were unnecessary.

**4. CRIMINAL LAW—EVIDENCE—RES GESTÆ.**

In a prosecution for the larceny of a check given to defendant by a person with whom he had agreed to join in the purchase of a piece of property for speculative purposes, there was evidence that the check was given as a part of the contribution which the other person was to make to enable defendant to purchase the property, and that the check was not so used, but was appropriated by defendant to his own use. The check was written by defendant, and the drawer, who could not read, testified that he did not know when he delivered the check that it was made payable to the persons named as payees, but supposed that it was payable to the owner of the land which he and defendant intended to purchase. Two days later another check was draw payable to defendant's order for the remainder of the amount which the drawer was to contribute to the purchase of the land. *Held*, that this check and the stub showing that it was payable to defendant was admissible in evidence as part of the res gestæ, bearing on the question as to a partnership and the credibility of the testimony of the drawer of the check.

**5. LARCENY—EVIDENCE—ADMISSIBILITY.**

In a prosecution for larceny of a check given by the drawer to defendant for a certain purpose and used by defendant to pay a personal debt, it appeared that the check was intended as a part of a larger sum, the remainder of which was turned over by the drawer to defendant by a check drawn two days later. The drawer testified that the reason why he did not give defendant a check for the full amount at the time the first check was drawn was because he did not know that the condition of his bank account would warrant the giving of a check of that amount. *Held*, that other checks given by him during the time intervening between the drawing of the first check given to defendant and the drawing of the second one were admissible as bearing upon the credibility of the testimony of the drawer of the check.

Appeal from Court of General Sessions, New York County.

Max Hart was convicted of larceny and appeals. Reversed and remanded.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

John R. Dos Passos, for appellant.
Robert C. Taylor, for respondent.

McLAUGHLIN, J. The defendant was convicted of the crime of grand larceny in the first degree and sentenced to state's prison for a term of seven years and six months upon an indictment which contained two counts; one charging him with having on the 6th of September, 1900, stolen from one Isaac Dahut a check for $600, and the other with having such check at the time stated in his possession as the trustee, agent, and bailee of Dahut, and feloniously appropriating the same to his own use. At the trial Dahut was the principal witness against the defendant, and from his testimony it appeared that he first met the defendant in 1897 or 1898, and that they had business relations between that time and the latter part of the year 1900; that as to one transaction at least they were partners, and that relation was not terminated until after February, 1901; that a few days prior to the 6th of September, 1900, he had a conversation with the defendant about some real estate in Philadelphia, Pa.; that the defendant told him they could make considerable money out of it in an "easy way"; that the property was owned by an old lady in Ireland, but his friend Mr.

Thompson, who was a big lawyer in Wall street, had a power of attorney to dispose of it; that the property could be bought for about $9,000, and, if he would put up $1,000, the defendant would put up $2,000, and buy the property, giving a mortgage for the balance of the purchase price; that in a short time it could be resold for double what it cost, and they would divide the profits in proportion to the money put in by them; that in pursuance of this talk they went to Philadelphia together, looked over the property, and decided to purchase it; that on the morning of the 6th of September, 1900, the defendant sent for him; that he went to his house and defendant told him it was necessary, in order to make the purchase, that the money should be put up at once; that he told the defendant he could not give him $1,000 that day, but would give him a check for $600, and in two or three days give him the balance of it; that he thereupon gave to the defendant his checkbook (inasmuch as he could neither read nor write the English language, except his own name and figures) for the purpose of having a check drawn for $600; that the defendant then drew a check for $600, and told him it was to the order of Thompson; that he signed the check, believing the statement to be true, and delivered it to the defendant; that the check was not drawn to the order of Thompson, but, instead, to Boardman & Boardman, to whom it was delivered for the purpose of paying interest on a mortgage held by them on certain real estate owned by Frieda Hart or the defendant, and which they were threatening to foreclose; and that he did not ascertain the check was made payable to Boardman & Boardman until some time in the following February. It was for stealing this check that the defendant was indicted on the 26th of April, 1904. From the cross-examination of Dahut and the testimony of defendant's witnesses, it appeared: That, when the $600 check was drawn, the defendant made an entry on the stub that it was drawn on him "for B. & B.," and he at the same time delivered to Dahut the following paper:

"New York, Sept. 6/1900.

"I. Dahut is hereby entitled to one-third of the profit of property in 2 Sts. & Federal St., Philadelphia, Pa., all expenses to be deducted and money must be returned by Sept. 22/1900. Mr. Dahut to take title to property.

"Frieda Hart, by Max Hart."

That he also delivered to him, for his accommodation, a note for $2,500, signed by Frieda Hart, which Dahut, on that day or the day following, had discounted and passed to his credit by the bank on which the check was drawn. That his bankbook was balanced on the 14th of September, 1900, and the vouchers, including the check in question, then or a few days later, were returned to him. That two days after the $600 check was drawn he had another check drawn (not by the defendant) for $400 to pay the balance of the $1,000 agreed to be paid. That this check was drawn payable to the order of the defendant, and on the stub was an entry: "Thompson Acct." The check and stub, however, the learned recorder would not permit defendant to introduce in evidence, nor would he permit him to put in evidence the checks drawn by Dahut intermediate the date of the $600 and the $400 check. On the 20th of October, 1900, Dahut gave to one Philbrick a note for $500, on the 13th of November one for $426.81, and

on the 13th of December another for $250, each of which was indorsed by the defendant. The learned recorder would not permit the defendant to show the purpose for which these notes were given, though the fact is undisputed that they were subsequently paid by the defendant, and at the time the last one was given the defendant gave to Dahut the following paper:

"Mr. Dahut, I hold no notes of any kind of your making where you are the maker, or you hold nothing of any note to my order this date for Mrs. Hart.                                                             Max Hart."

Some time in March, 1901, and subsequent to the time when Dahut ascertained that the check for $600 had not been ·delivered to Thompson, as he testified he intended it should be, he went, with the defendant, to the office of Thompson, for the purpose of retaining him in legal proceedings, and the defendant then gave to Thompson for Dahut a check for $50 for that purpose. That nothing was then said by Dahut to Thompson as to the $600 check, nor was any inquiry made by him with reference to such check, nor any complaint made as to the defendant's acts in connection with it, and this notwithstanding the fact that there was some evidence, at least, that the defendant or some one acting in his behalf had acquired title to the Philadelphia property.

It also appeared that on the 16th of August, 1901, Dahut was examined in proceedings supplementary to execution, and he then testified that some time prior thereto he loaned the defendant $1,000 in two checks, one for $600 and another for $400, which loan had not been paid. There was no evidence that he had ever let him have checks for $600 and $400 other than those delivered on September 6th and 8th. At the close of the people's case a motion was made by defendant's counsel that the learned recorder advise the jury to acquit, which motion was denied and an exception taken, and a similar motion was made at the close of the whole case, to which a similar ruling was made and an exception taken.

During the course of the charge the jury was instructed, if they found there was an actual partnership between Dahut and the defendant, "that they had actually entered into partnership, in that transaction, it is a rule of law that, even though one partner misappropriates the money of a partnership, he does not ·steal it from his partner because the interests of copartners are joined. They are not severed in so far as a criminal transaction is concerned. But, if you find that a partnership was not entered into, that it was not consummated, * * * then I charge you the defendant was bound to apply that money for the purposes for which it was given to him, and if the defendant applied that money to any other purpose and appropriated it to his own use, with intent to deprive or defraud Dahut of the $600, then I charge you he stole that $600 and committed the crime of larceny." At the conclusion of the charge one of the jurors said:

"I would like to ask your honor one question: 'What constitutes a partnership between two people who agree to buy a piece of property together, as these two men did?' To which the learned recorder responded: 'It is not necessary for me to deliver instructions upon that point. I must decline to enter into instructions upon that point. I have instructed you upon that subject as far as it is necessary for this case.'"

The defendant was not sworn as a witness at the trial. He had a right to testify or not as he saw fit, but the fact that he did not testify in his own behalf created no presumption whatever against him. Section 393, Code Cr. Proc. He had a right to rely on the weakness of the people's case and not offer any evidence whatever, and if he did so, unless the proof established his guilt beyond a reasonable doubt, he was entitled to an acquittal. He, however, saw fit to go into his defense and from the testimony of his witnesses, as well as from the cross-examination of the people's witness Dahut, it is contended that the people did not meet the burden which rested upon them of establishing his guilt beyond a reasonable doubt. On the contrary, that such evidence did establish that the check which the defendant has been found guilty of stealing was either a loan by Dahut to him or a contribution to a partnership existing between them.

After a careful consideration of all the evidence set out in this record, I am of the opinion that the court erred in not advising the jury to acquit. The evidence is insufficient to sustain the finding of the jury that the defendant was guilty of larceny in taking and using the $600 check, as that crime is defined by section 528 of the Penal Code. The people's case rests entirely upon the testimony of the witness Dahut, and he is not corroborated in a single particular, except as to a fact which is undisputed, viz., that the check for $600 was drawn to the order of and used by Boardman & Boardman for the defendant's personal benefit. Dahut and the defendant, at the time this check was given, were concededly partners as to another transaction relating to real estate. This same relation existed prior and subsequent to the giving of this check. They had also had other business transactions together, had borrowed and loaned each other ·money, had indorsed each other's notes, and at the very time defendant received the $600 check he delivered to Dahut for his accommodation his wife's note for $2,500. They had a day or two before been to Philadelphia and looked over real estate in that city, with a view to, and had agreed to, purchase it. This Dahut admitted, and the memorandum which he received when the $600 check was delivered shows that they were partners in that transaction, and were to share, in the proportions stated, the profits or losses. The defendant subsequently, according to the witness Berg, acquired an option to purchase this real estate, paying therefor $2,500 or $3,000, in which Dahut stated he had a one-third interest. Dahut did not deny this statement of the witness Berg, nor did he deny that Hart did acquire the option. When these facts are considered, and due weight given to them, in connection with the sworn statement of Dahut (made after he discovered that the $600 check was delivered to Boardman & Boardman) that he loaned $1,000 to the defendant in two checks, one for $600 and another for $400, which loan was unpaid, and that the indictment was not found until more than three years after the alleged theft was discovered, the conclusion is irresistible that the defendant and Dahut were partners as to the Philadelphia transaction, and the check was given as Dahut's contribution to the partnership fund. The fact that the identical check for $600 was not used for that purpose did not make the defendant guilty of larceny, nor in any possible view did it make him guilty of embezzle-

ment, if the contemplated interest was subsequently acquired and paid for by the defendant.

But, if I am in error in saying that the court should have advised an acquittal, then there must be a new trial because the court did not properly instruct the jury as to what would constitute a partnership between the parties if they agreed to buy the Philadelphia property. This was a very important subject for the consideration of the jury, and one of them seemed to appreciate it as evidenced by his inquiry: "What constitutes a partnership between two people who agree to buy a piece of property, as these two men did?" The question should have been answered. The subsequent remarks of the court did not answer it. On the contrary, in effect withdrew it from them.

I am also of the opinion that the court erred in excluding the $400 check and stub. It was drawn only two days after the $600 check. It was to pay the balance of the $1,000 agreed to be paid by Dahut, was payable to the defendant's order, and so entered on the stub. It was a part of the transaction, and was admissible in evidence as part of the res gestæ. The jury had a right to consider it as bearing upon the question of whether there was a partnership, and also upon Dahut's credibility in testifying that he did not know, when he delivered the $600 check, that it was made payable to Boardman & Boardman, but supposed it was payable to Thompson.

The court also erred in excluding the checks drawn by Dahut intermediate the drawing of the $600 and $400 checks. Dahut testified that at the time the $600 check was given defendant asked for $1,000, which was not then given because he did not know that the condition of his bank account would warrant the giving of a check for that amount. Had these checks been admitted they might, and probably would, have had a bearing upon Dahut's credibility in this respect.

Other errors are alleged; but, inasmuch as there must be a new trial and they may not again occur, it is unnecessary to consider them.

The judgment of conviction is reversed, and a new trial ordered. All concur; HOUGHTON, J., in result.