THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP WALKER ZINKE, Appellant.

First Department, May 30, 1989

### APPEARANCES OF COUNSEL

*Barry D. Leiwant* of counsel *(Laura Miranda* with him on the brief; *Philip L. Weinstein,* attorney), for appellant.

*Lisa Feiner* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether a general partner with virtually unfettered management control and investment discretion may be held criminally accountable for misappropriating a limited partnership's funds.

In April 1981, defendant, an investment adviser for small pension and profit-sharing funds, formed a limited partnership, SIN (Stonehenge Investment Notes) 1, Ltd., in which he was the general partner and about 20 to 25 pension funds or profit-sharing plans were limited partners. The partnership's purpose, as defined in the partnership agreement, was to invest in "negotiable notes, mortgages and other evidences of indebtedness secured by real property." The partnership assets were invested basically in second mortgages on properties located in California. Defendant invested about $40,000 of his own money in the partnership when it started and another

$360,000 in 1985, after the incidents which led to his conviction had occurred.

As general partner, defendant controlled the partnership's books, records and cash. Although the limited partners had the right to inspect all partnership records and to receive yearly certified balance sheets and profit and loss statements, they did not have the right to review the investments defendant selected or countersign partnership checks. Nor did they have any voice in the running of the partnership.

On January 9, 1984, defendant entered into negotiations with a real estate broker to purchase for $9,650,000 a landmark building at 4 East 54th Street. owned by Joseph Famolare, and signed a purchase agreement on behalf of an entity named Philip, Page, Staunton and Geer, Inc. a private corporation, totally unrelated to SIN 1, in which he and various family members were the only shareholders. Defendant made a $700,000 down payment with a check drawn on his personal account.

The formal contract of sale called for an April 2, 1984 closing, but provided for an extension of time until July 2, 1984 if defendant paid an additional $250,000 by April 2nd. If defendant neither closed on April 2nd nor paid the additional $250,000, he would forfeit the previously advanced $700,000. On April 2 defendant extended the closing date until July 2nd by issuing a check to Famolare for $250,000 drawn on a money market account maintained by SIN 1 with the Benham Capital Management Group in Palo Alto, California.

Subsequently, defendant and Famolare entered into a letter agreement under which defendant, by an additional $1,000,000 paid to Famolare no later than July 6th, could postpone the closing until August 6, 1984. The agreement, which contained a "time is of the essence" clause, provided that if defendant did not pay the additional $1,000,000 by July 6th, Famolare was released from his obligation under the contract and was entitled to retain, as liquidated damages, the $950,000 which defendant had already paid. If, by paying the additional $1,000,000, defendant obtained the extension until August 6th but then did not close by that date, Famolare would be released from his obligation and could keep as liquidated damages all moneys paid. SIN 1's name did not appear on any of the documents relating to the purchase or sale of the building.

On July 5th defendant paid Famolare the $1,000,000 by

issuing two checks, one for .$200,000 drawn on his personal account and one for $800,000 drawn on SIN 1's money market account. The closing took place on August 6th, and the property was then transferred to a limited partnership known as 4 East 54th Street Associates, which defendant had created for the purpose of taking title to the building, and of which he was the general partner and Philip, Page, Staunton and Geer, Inc. the limited partner.

Defendant eventually sold the building on behalf of 4 East 54th Street Associates to the Indonesian government for $11,600,000. In his dealings, he never indicated to either the buyer's broker or lawyer that he was selling the building for SIN 1; in fact, neither ever heard the name mentioned. As of the date of the trial, defendant had not returned any part of the $1,050,000, even though he made a gross profit of $2,000,000 on the transaction.

Although defendant had been providing quarterly reports to SIN 1's limited partners and filing yearly partnership tax returns, he stopped doing so in 1984, the year he withdrew $1,050,000 in partnership funds to purchase 4 East 54th Street. None of SIN 1's limited partners had any financial interest in the purchase; nor did they receive any profits therefrom. They never gave defendant permission to use partnership money to purchase the building for himself.

Defendant testified that when he withdrew partnership funds for the purchase of 4 East 54th Street, he was merely borrowing from the partnership money which he had every intention of repaying. Such loans, he testified, were authorized by the partnership agreement, which permitted him to lend any of the partnership's property, with or without securities, to himself or other entities controlled by him provided that the repayment terms were "no less favorable" to the partnership than are generally afforded in an arm's length transaction with third parties. To evidence his obligation to repay SIN 1, defendant executed two promissory notes to the partnership; he eventually substituted a third note to cover the entire obligation. None of these notes were notarized; nor were they filed with any third party or agency or shown or mentioned to any of the limited partners. No one was present when they were executed. The notes provided that when the principal was repaid, defendant was also obligated to pay interest at the same rate as had been paid on SIN 1's funds or 20% of the profit from any resale of 4 East 54th Street, whichever was greater. No periodic interest payments were

required. By the terms of the third promissory note, defendant was only obligated to repay SIN 1 after the net profit on the sale of the building had been determined.*

The People established on rebuttal that during the course of settlement discussions in several civil lawsuits commenced by various limited partners, neither defendant nor his lawyer ever claimed that he had prepared contemporaneous promissory notes reflecting that he was simply borrowing the money when he withdrew it. Moreover, defendant never said that he had withdrawn the $1,050,000 for the benefit of SIN 1; nor did he ever mention that SIN 1 would be entitled to any participation in the profits upon the sale of the building. Needless to say, if genuine, the notes would have provided a complete defense to the conversion actions brought against defendant and should have been provided during the negotiations.

At the close of the evidence, defendant moved for a trial order of dismissal on the ground that, as the general partner of SIN 1, he was a "joint or common" owner of the partnership's property and, thus, under New York law, could not be prosecuted for larceny even if he had misappropriated partnership property. The prosecutor argued that because defendant was charged with stealing from a limited partnership, an entity more akin to a corporation than a conventional partnership, the larceny charge was appropriate. The court reserved decision and submitted the case to the jury, which convicted defendant of the two submitted counts of grand larceny in the second degree.

After the verdict, the court denied the motion in a written opinion (137 Misc 2d 463), holding, "[T]he unique characteristics of limited partnerships in terms of (1) the relationship between general partners and limited partners, (2) their kinship with corporate directors and shareholders, and (3) the distinct legal entity such a partnership creates mandate the ruling that a general partner is accountable under the criminal law for any embezzlement from a limited partnership." (Supra, at 468.) Defendant appeals.

In order to establish defendant's guilt of larceny, the People were required to prove that, with the intention of disposing of the same for his own benefit, he wrongfully withheld property from its owner, SIN 1. The People's proof shows that defen-

---

* At the time of trial that determination had not been made because, according to defendant, his dispute as to the share of the profit owed to one of his creditors was still unresolved.

dant withdrew $1,050,000 from the partnership account in two installments in order to make payments on a building that he was purchasing for himself. His motive in looting the partnership account in such manner was transparent. He had been unable to close on the purchase of the building on two separate occasions, and, by the terms of his agreement with the seller, risked forfeiting $700,000 of his own money if he did not make the payments required to extend the closing dates. Defendant ultimately purchased the building in part with the $1,050,000 in partnership moneys he had withdrawn from the partnership account, sold it seven months later at a gross profit of $2,000,000, used that profit entirely for his own account and never repaid the partnership. Indeed, in his own testimony, defendant conceded these basic facts. Thus, there was no doubt that he had appropriated to himself the partnership's funds.

On appeal, defendant reasserts the claim that he cannot be prosecuted for larceny because the Penal Law prohibits a prosecution of a joint owner of property who takes it from another joint owner. We disagree and find, as a matter of law, that defendant was not a joint or common owner of partnership property exempt from prosecution for larceny for stealing such property. Thus, we affirm the conviction, but modify the sentence to the extent of eliminating, as violative of the Constitution's Ex Post Facto Clause, the provision for the imposition of a 5% surcharge on the $1,050,000 of which defendant has been directed to make restitution.

Fiduciaries such as corporate officers or directors who divert stockholders' funds for their own private purposes are guilty of embezzlement under the larceny statute. In this case, defendant, the general partner of a limited partnership, stood in precisely the same fiduciary relationship to the limited partners and was obligated to manage the partnership's assets for their benefit. Defendant, however, citing the common-law principle that it is not larceny to take property of which the taker is a part owner (see, e.g., 3 Torcia, Wharton's Criminal Law § 393, at 391-392 [14th ed 1980]), claims an exemption from criminal prosecution for misappropriating partnership property. He argues that New York has consistently followed the common-law rule (see, People v Hart, 114 App Div 9; People v O'Brien, 102 Misc 2d 246; People v Dye, 134 Misc 689) and points to the Legislature's rejection, in enacting the current Penal Law in 1965 (L 1965, ch 1030), of the position of the Model Penal Code, which abrogated the common-law rule

by defining larceny as stealing the "property of another", and the latter as any property "in which any person other than the actor has an interest * * * regardless of the fact that the actor also has an interest in the property" (Model Penal Code § 223.0 [7]; § 223.2 [1]).

Defendant's claim that New York law prohibits a larceny prosecution of a partner for stealing partnership funds is, in our view, itself incorrect since under New York law a partner is a "co-owner" of partnership property only when he is using it for the partnership's purposes. (Partnership Law § 51 [2] [a].) Moreover, the common-law rule loses it vitality outside the context of a traditional partnership in which each member has equal control over the business, as well as an equal opportunity to protect himself from another partner's theft. Here, the limited partners entrusted their funds to defendant to manage for their benefit, and he committed a theft when he used those funds for himself.

Pursuant to Penal Law § 155.05, a person is guilty of larceny if he takes, obtains or withholds property from an owner thereof. An "owner" of property is statutorily defined as a person who "has a right to possession * * * superior to that of the taker". (Penal Law § 155.00 [5].) By statute, one "joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof." (Penal Law § 155.00 [5].) Thus, a joint or common owner of property cannot be prosecuted for larceny if he steals that property from another joint or common owner, because the person from whom the property was taken is deemed by statute to have an equal, not superior, right of possession.

Partners, however, are "co-owners" of partnership property only when they possess the property in furtherance of the purposes of the partnership. Section 50 (a) of the Partnership Law describes the property of a partner to include "his rights in specific partnership property," such as the partnership bank accounts involved in this case. Section 51 (1) provides that "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." If such "co-ownership" of a tenancy in partnership gave each partner an equal right to possess partnership property under all circumstances, as does co-ownership under other types of tenancies in common, then the proposition that partners can never steal from each other would be correct. No partner

would ever have a possessory right superior to another, and none would be "owners" under the larceny statute.

Partnership Law § 51 (2) (a), however, provides that a tenancy in partnership gives partners "an equal right * * * to possess specific partnership property for partnership purposes". Section 51 (2) (a) just as clearly denies to any partner the "right to possess such property for any other purpose without the consent of his partners." Thus, a partner who diverts property from the partnership for his own purposes does so without a possessory right under the tenancy in partnership.

This limitation on the possessory rights appurtenant to a tenancy in partnership is a natural concomitant of the legal principle codified in section 43 of the Partnership Law, namely, that every partner must act as a fiduciary for the other partners when dealing with partnership property. (Meinhard v Salmon, 249 NY 458, 463-469.) Such fiduciary relationship among partners is not generally imposed on other joint owners of property. (See, e.g., Streeter v Shultz, 45 Hun 406, 409 [3d Dept 1887], affd 127 NY 652.) Thus, it is not surprising that a tenancy in partnership has been described as a unique form of co-ownership. (Moynihan, Real Property, ch 10, § 1, n 1 [1965]; see also, Matter of Minton Group (46 Bankr 222 [SD NY 1985].)

Defendant's insistence that partners are joint owners under section 155.00 (5) of the Penal Law is based almost entirely on the commentary to that section (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, at 104 [1975 ed]), which is not itself premised on the Partnership Law's definition of co-ownership, but, rather, on two old appellate cases, both decided before the 1919 enactment of the Partnership Law with its limited definition of a partner's ownership rights. Moreover, since neither of those cases unambiguously holds that partners are the type of joint owners who cannot be held criminally responsible for stealing from one another, they hardly provide a persuasive basis to exempt from criminal liability conduct that would in nonpartnership contexts be regarded as embezzlement.

For example, in Holmes v Gilman (138 NY 369, 377), the Court of Appeals stated that a misappropriation of partnership funds could not be regarded in law as an embezzlement. The statement, which was entirely unnecessary to resolve the issues of civil liability before the court, is dicta and provides

only the weakest support for defendant's position. The other authority, *People v Hart* (114 App Div 9, *supra)*, does not provide any stronger support. There, the trial court had instructed the jury that it could not find the defendant guilty of larceny if he was a partner of his victim, but then refused to answer the jury's question as to how to determine whether the two were in fact partners. In reversing, this court did not hold that such instruction was required or adopt its content as a principle of law. Instead, it apparently ruled that since the Trial Judge's instruction was the law of the case, it was error to fail to elucidate for the jurors the legal principles relevant to the issue. Even if construed as an endorsement of the principle that one partner cannot steal from another, the holding is too tangential to be viewed as decisive authority.

Thus, in our view, the language of the Partnership Law shows that a partner is not exempted from criminal liability for theft when he diverts partnership property to his own purposes. But we need not decide whether this logical principle applies to a traditional partnership since what is involved here is an entirely different situation, one in which defendant, as the general partner, was primarily a manager of the limited partners' money, and only secondarily an investor in or owner of the business. That role difference, we believe, clearly takes defendant and other general partners out of the "joint ownership" exemption from criminal liability.

Technically, all partners are fiduciaries of one another. In the traditional partnership, however, each partner has an absolute and equal statutory right to manage the business. (Partnership Law § 40 [5]; § 50 [c].) Therefore, each partner has an opportunity to protect himself from another partner's theft, because each has a right to supervise the business to insure that partnership funds are being spent only for partnership purposes.

By contrast, in a limited partnership only the general partner has any right to manage the business. (Partnership Law §§ 96, 98.) Unlike regular partners with equal management rights, limited partners are mere passive investors, entirely dependent on the good faith and integrity of the general partner to whom they have entrusted their investment. They thus stand in the same position in regard to the general partners as stockholders in regard to corporate officers and directors, who are not exempt from a larceny prosecution when they embezzle corporate assets.

Indeed, since the purpose of a limited partnership is to encourage "persons with capital to become partners with those having skill" *(Riviera Congress Assocs. v Yassky,* 25 AD2d 291, 295, *affd* 18 NY2d 540), thereby enabling investors to aggregate their funds "into common enterprises of considerable size" *(Matter of United States v Silverstein,* 314 F2d 789, 791, *cert denied* 374 US 807), a general partner's managerial role is at the very core of the Limited Partnership Act. (Partnership Law § 90 *et seq.)* As the New York Court of Appeals stated in *Fifth Ave. Bank v Colgate* (120 NY 381), construing the Limited Partnership Act almost 100 years ago: "The policy of this law was to bring into trade and commerce funds of those not inclined to engage in that business, who were disposed to furnish capital upon such limited liability, with a view to the share of profits which might be expected to result to them from its use. And the fact that the law has been in operation in this state for nearly seventy years, and has been adopted in most if not all the states of the union, indicates that it is deemed to have its advantages, and that it serves a purpose consistent with the public welfare. It is entitled to a reasonable construction for the protection of the special partners as well as others, that the statute in its design may be rendered effectual." *(Supra,* at 396.)

Thus, limited partnerships perform the identical capital accumulation function of businesses operated in the corporate form. As the trial court correctly noted, a "reasonable construction" of the Limited Partnership Act has consistently equated limited partners with corporate shareholders, since both are investors who opt for limited authority in exchange for limited liability.

The analogy between limited partnerships and corporations and the concomitant fiduciary duty imposed on their managers was clearly recognized by the Court of Appeals in *Lichtyger v Franchard Corp.* (18 NY2d 528): "There is no basis or warrant for distinguishing the fiduciary relationship of corporate director and shareholder from that of general partner and limited partner. The principle is the same—those in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form." *(Supra,* at 536.)

The evidence here presents a clear case of a managing general partner, with total control over the partnership's assets, violating his fiduciary duty by stealing money en-

trusted to him. Under the limited partnership agreement herein, the limited partners provided the bulk of the funds. While defendant's capital contribution was minimal, his control of the partnership assets and of the day-to-day operation of the partnership was absolute; he had total discretion in selecting the partnership's investments. Realistically, defendant's function as general partner was that of a hired manager of the limited partners' assets, and not an owner of them.

Sound public policy and morality demand that, just as the corporate director or officer is criminally responsible for a larceny from the corporation, the general partner to whom limited partners have entrusted their assets be criminally accountable for embezzling those assets. Otherwise, a general partner would have little incentive to follow the rules since the worst he could expect would be a civil accounting, which is hardly a deterrent in view of the significant potential gain to him.

Exempting general partners from criminal liability would undermine the very purpose of limited partnerships. Investors would become reluctant to place their funds in an enterprise if the fiduciary to whom they entrust them cannot be prosecuted when he steals. Since the deterrent provided by the criminal law is essential for "the protection of the special partners" *(Fifth Ave. Bank v Colgate, supra,* 120 NY, at 396), the law should be given the "reasonable construction" *(supra)* which leads to that salutary result. Only an interpretation of the co-ownership exemption that excludes the general partner of a limited partnership will "promote justice and effect the objects of the [Penal] law" (Penal Law § 5.00).

Thus, under the Penal Law and the Partnership Law, only "co-owners" of property are exempted from criminal liability for theft, and those who divert partnership funds for their own purposes do not "co-own" them with their innocent victims. In any event, a general partner who manages partnership property for limited partners is not exempt from prosecution for embezzlement when he steals that property.

Finally, in sentencing defendant, the court, in addition to imposing an indeterminate term of incarceration, ordered defendant to make restitution in the sum of $1,050,000 and pay a 5% surcharge of $52,500. Penal Law § 60.27 (8), effective November 1, 1984 (L 1984, ch 965, § 4), requires the imposition of a 5% surcharge on every sentence of restitution. Defendant's crimes, however, were committed on April 2, 1984 and

July 5, 1984, 4 and 7 months, respectively, before the statute's effective date.

■■ In accordance with the dictates of the Ex Post Facto Clause of the US Constitution (art I, § 10), "[i]t is well settled that where a criminal statute increases the punishment for previously committed crimes, the statute may not be applied retroactively". *(People v Winston,* 92 AD2d 740, 741.) Thus, the provision for a 5% surcharge cannot be applied retroactively to punish conduct that occurred before its effective date. *(See, People v Pani,* 138 AD2d 532, 533-534.) Even though defendant failed to object at the time of sentence, an error which results in an illegal sentence of restitution can be reviewed on appeal as a question of law. *(People v Fuller,* 57 NY2d 152, 156.) Defendant's sentence should be modified by deleting the provision for the 5% surcharge.

We have examined defendant's other contentions and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Edward McLaughlin, J.), rendered October 14, 1987, convicting defendant of two counts of grand larceny in the second degree and sentencing him to, *inter alia,* concurrent, indeterminate terms of imprisonment of from 1½ to 4½ years, and directing him to make restitution of $1,050,000 plus a 5% surcharge, should be modified, on the law, to vacate the provision for the 5% surcharge, and, except as thus modified, affirmed.

MURPHY, P. J., ROSS and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on October 14, 1987, unanimously modified, on the law, to vacate the provision for the 5% surcharge, and, except as thus modified, affirmed. The case is remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).