Fuld, J.
The plaintiffs-appellants, who sue “ on Behalf of Themselves and All Others Similarly Situated ’ ’, are 31 limited partners with $202,500 invested in a real estate syndicate, River View Associates, of which the defendants Siegel and Young are the general partners.[1] River View is the owner in fee of the Sheraton Motor Inn in New York City, a motel in whose financing and operation the corporate defendants were all involved. The gravamen of the amended complaint is that, ‘ ‘ in wanton dis *532 regard of the interests of the limited partners of River View, and in breach of their fiduciary obligations thereto, Siegel and Yonng conspired together with each other, and with others,” to renegotiate the lease and mortgage on the premises. These transactions, which are characterized “mismanagement” and “ waste ”, had the effect of reducing the return upon the limited partners’ investments from 11 to 8%. At this juncture in the litigation — which is still in the pleading stages — the primary issues are whether the plaintiffs are entitled to bring their suit as a class action and to seek equitable relief.
River View’s interests are managed by the Franchard Corporation. In 1960 River View leased the land to Venada Corporation which built the motel and arranged to have the Sheraton Corporation manage it. Venada subsequently assigned its interest to Sherview Corporation, a wholly owned Venada subsidiary. It is alleged that the defendants Siegel and Young are ‘ ‘ officers and directors of, and in actual control ’ ’ of Fran-chard, Venada and Sherview. In 1962 Venada and Sherview became insolvent, leaving $1,200,000 of mechanics’ liens unpaid, owing nearly $1,000,000 to Franchard and defaulting on the leasehold mortgage held by James Talcott, Inc.
Keeping the limited partners abreast of developments by letter, Siegel and Young then negotiated with several of the corporate defendants, purportedly in an effort to save the enterprise and put it on a sound financial basis. In return for a new lease at reduced rental, Talcott foreclosed on its leasehold mortgage, successfully bid for the leasehold at the foreclosure sale, satisfied all of the outstanding mechanics’ liens and unconditionally guaranteed to meet “ all obligations ” as tenant or to find an acceptable substitute guarantor. Talcott thereafter sold its interest to Sheraton which, with River View’s consent, took over the guarantee of the tenant’s obligations. At about the same time, Penn Mutual Life Insurance Company, which held the mortgage on the fee, agreed to extend the term of the mortgage at a higher rate of interest. Thus, by these complicated transactions, the mortgage on the fee was refinanced and Sheraton replaced Sherview as River View’s tenant under a new lease providing for reduced rental.
The limited partnership agreement allegedly provides that out of the fixed net annual rental derived from River View’s prop *533 erty $12,500 was to be paid to Franehard as supervisory management fees and the balance was to be distributed to the limited partners. Under the old lease with Venada and Sherview, River View was entitled to a fixed net rental of $590,000 a year which produced a regular return of 11% upon the investment of the limited partners and all of them actually received such return (of 11%) through December, 1963. Under the new lease with Sheraton the fixed net rental — which, incidentally, is “ guaranteed ” — -was reduced by approximately $157,000 a year. In addition, River View agreed to meet the new and more expensive carrying charges that had previously been paid by the tenant on the mortgage held by Penn Mutual. The cumulative effect was to generate only an 8% return on the investments of the River View limited partners.
Shortly before the new lease and mortgage arrangements were consummated, the plaintiffs brought this suit to obtain compensatory and punitive damages as well as to enjoin all of the defendants from proceeding further with the arrangements and to rescind those already completed. It was alleged that the general partners, Siegel and Young, had conspired with the corporate defendants, Venada, Sherview and Franehard, to make it impossible for Venada and Sherview to meet their obligations. The same parties were then alleged to have conspired for the purpose of renegotiating the lease and fee mortgage. Talcott was charged, along with Franehard, Venada and Sherview, with having induced, participated in, or accepted the benefits of the wrongful acts of Siegel and Young. Although Sheraton, the present lessee, and Penn Mutual, the mortgagee, were also joined as parties defendant, they were not accused of having participated in the wrongdoing or having acted collusively with the alleged conspirators.
The plaintiffs subsequently amended their complaint so as to assert, as previously indicated, that they were suing “ on Behalf of Themselves and All Others Similarly Situated ”. At least three of the other limited partners whom the plaintiffs purport to represent have indicated that they are in complete disagreement with the position taken by the plaintiffs and are satisfied with the new lease and its provision for reduced, but guaranteed, rental.
*534 The defendants Sheraton and Talcott — and they are the only defendants before us — moved for summary judgment dismissing the complaint insofar as it seeks rescission of the new lease and mortgage arrangements (CPLR 3211 [c]) as well as an order dismissing the complaint on the ground that it does not state a representative cause of action (CPLR 3211[a] [7]). The Supreme Court granted the motion and, on appeal, the Appellate Division affirmed the resulting order.
"We hold that no action in equity (for rescission) has been stated and that, consequently, the order of the Appellate Division should be affirmed. However, assuming, as we must, that the allegations in the complaint are true and that the general partners of River Yiew are guilty of wrongful conduct, it is our conclusion that the plaintiffs are privileged to bring a class action for damages on behalf of all the other River Yiew limited partners. Such a class action is authorized by CPLR 1005(a) and nothing in the Partnership Law or in the nature of limited partnerships generally calls for a different determination.
Section 1005(a) provides for a class action where a “ question is one of a common or general interest of many persons ” and, as we see it, this case does involve such questions affecting the rights of all of the River Yiew limited partners. Under the terms of the partnership agreement, the limited partners are entitled to receive as a return on their investment the fixed rental less the Pranchard management fee and other expenses. It is clear, then, that, if the fixed rental were wrongfully impaired, all of the limited partners would be injured in the same way and the matter would be of “ common or general interest ” to them. Moreover, since the general partners receive their compensation from Pranchard and the Pranchard management fee to River Yiew has remained constant, it is equally apparent that only the interests of the limited partners could have been prejudiced by. the reduction of fixed rental in the new lease with Sheraton and by the increased expenses of the renegotiated mortgage with Penn Mutual. Accordingly, it is proper that the plaintiffs be permitted to sue on behalf of the other limited partners. (Cf. Leibert v. Clapp, 13 N Y 2d 313.)
This conclusion is not at odds with any of our decisions holding that a class action was unauthorized because ‘ ‘ separate wrongs ’ ’ had been done to each member of the putative class. (Society *535 Milion Athena v. National Bank of Greece, 281 N. Y. 282, 294; see Coolidge v. Kaskel, 16 N Y 2d 559; Onofrio v. Playboy Club of N. Y., 15 N Y 2d 740; Gaynor v. Rockefeller, 15 N Y 2d 120; Kennerley v. New York Tel. Co., 299 N. Y. 623; Kahlmeyer v. Green-Wood Cemetery, 287 N. Y. 787; Brenner v. Title Guar. & Trust Co., 276 N. Y. 230; Bouton v. Van Buren, 229 N. Y. 17.) The situations reflected in those cases are very different from the one before us where the ‘ ‘ common or general interest ’ ’ among the limited partners’ (CPLR 1005[a]) is at least as substantial as the common interests which, in the past, have sustained class suits. (See, e.g., Leibert v. Clapp, 13 N Y 2d 313, supra; Case v. Indian Motorcycle Co., 300 N. Y. 513; Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304; Tyndall v. Pinelawn Cemetery, 198 N. Y. 217; Guffanti v. National Sur. Co., 196 N. Y. 452; Pfohl v. Simpson, 74 N. Y. 137.) To be sure, many of these cases involved a fund with only a limited capacity to satisfy the claims asserted against it (see, e.g., Tyndall v. Pinelawn Cemetery, 198 N. Y. 217, supra; Guffanti v. National Sur. Co., 196 N. Y. 452, supra; Pfohl v. Simpson, 74 N. Y. 137, supra) but we have also permitted class actions for money damages or equitable relief to be brought in the absence of a “ common fund ”. (See, e.g., Leibert v. Clapp, 13 N Y 2d 313, supra; Case v. Indian Motorcycle Co., 300 N. Y. 513, supra; Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304, 314, supra; see, also, Jones v. Healy, 185 Misc. 400.) Our earlier decisions, therefore, point the way toward allowing the plaintiffs before us to sue on behalf of all the limited partners in order to vindicate their common interest in the rate of return on their investments. (Cf. Riviera Congress Assoc. v. Yassky, 18 N Y 2d 540, also decided today.)
Turning to the Partnership Law, we find nothing in it which, under the circumstances of this case, requires us to reach a different result here. A reading of article 8 of the Partnership Law makes it clear that limited partners may not interfere in any manner with the conduct or control of the. partnership business. They are entitled only “ to inspect and copy ’ ’ the partnership books, to demand “ a formal account of partnership affairs ”, to participate in “ dissolution and winding up ” and “ to receive a share of the [partnership] profits ”. By adhering to this arrangement, the limited partner is exempted from gen *536 eral liability and places “ ‘ his capital alone at the peril of the business.’ ” (Lanier v. Bowdoin, 282 N. Y. 32, 38.) As we had occasion to remark in Ruzicka v. Rager (305 N. Y. 191, 197-198), the limited partner is in “a position analogous to that of a corporate shareholder”, an investor who likewise has limited liability and no voice in the operation of an enterprise. That was not the first time in our case law that similarities were drawn between corporations and partnerships.
More than 130 years ago, Chancellor Walworth in the leading case of Robinson v. Smith (3 Paige Ch. 222) found support in the legal principles governing trusts and partnerships for his decision that stockholders could bring a representative action against the directors of a corporation for fraudulent waste and mismanagement of the corporate assets. In the course of his opinion, the Chancellor noted that all of the stockholders had “ similar interests, in every respect, * * * arising out of the same trust ” and that the cause of action sought “ redress against their trustees * * * for the same acts * * * [which caused] a similar and common injury” (3 Paige Ch., at pp. 230-231). He then went on to say (p. 232):
“ The directors are the trustees or managing partners, and the stockholders are cestui que trusts, and have a joint interest in all the property and effects of the corporation. * * * And no injury the stockholders may sustain by a fraudulent breach of trust, can, upon the general principles of equity, be suffered to pass without remedy.” (Emphasis supplied.)
There is no basis or warrant for distinguishing the fiduciary relationship of corporate director and shareholder from that of general partner and limited partner. The principle is the same —those in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form. (See, e.g., Leibert v. Clapp, 13 N Y 2d 313, supra; Meinhard v. Salmon, 249 N. Y. 458.) As Chief Judge Cardozo stated so eloquently in the Meinhard case (249 N. Y. 450, 464, supra), “Not honesty alone, but the punctilio of an honor the most sensitive, is * * * the standard of behavior.” A breach of this fiduciary duty *537 adversely affects in tlie same way the interests of every investor who has no voice in the operations of the business and, being a wrong done to all, it should be susceptible of correction by legal action taken for the benefit of all. To permit stockholders to bring a representative suit but to deny the same privilege to limited partners would be highly unreasonable. (Cf. Riviera Congress Assoc. v. Yassky, 18 N Y 2d 540, supra.)
Although, as we have already stated, we differ with the Appellate Division in our holding that the plaintiffs may bring a class action, we are led to affirm the order appealed from because the plaintiffs are not entitled to the equitable relief which they seek. Even when the complaint is read most liberally, it appears that money damages will provide a complete and adequate remedy to the plaintiffs for the 3% reduction in the return on their investments and, as we have frequently noted, ‘ ‘ Where an adequate remedy at law is provided, the reason for granting equitable relief disappears”. (Lewis v. City of Lockport, 276 N. Y. 336, 342; see Rosenbaum v. Rosenbaum, 309 N. Y. 371, 377.) Furthermore, we may not overlook that some of the limited partners — the class which the plaintiffs purport to represent— apparently are satisfied with the present state of affairs and prefer a guaranteed 8% return under the new lease with Sheraton to an u/nseciored 11% return under the old lease with Venada and Sherview. In the face of such a conflict of interests between the plaintiffs and other members of the class, to permit a representative suit for equitable relief would probably “not afford that protection to absent parties which due process requires.” (Hansberry v. Lee, 311 U. S. 32, 45; see Giordano v. Radio Corp. of America, 183 F. 2d 558; Fisher v. Pederson, 100 N. W. 2d 156 [N. D.]; Lonsford v. Burton, 200 Ore. 497.)[2]
The plaintiffs have not charged Sheraton with wrongdoing and have deliberately refrained from asserting a claim against it for money damages. We think it would be inconsistent with *538 the dormant role of limited partners under our statute if they were permitted to interfere with or effect a rescission of any commercial dealings which the partnership had with third parties who were not acting in concert or collusion with the wrongdoing-general partners and who had no knowledge of such wrongdoing. Were the rule otherwise, it would defeat the reasonable expectations of those who, in entire good faith, transacted business with the partnership. However, although in the present case uit was commenced before the new lease arrangements were completed — and we assume, without deciding, that this put Sheraton on “notice” of possible wrongdoing by the general partners — that defendant was joined as a party solely for the purpose of having the lease set aside and, as previously indicated, the plaintiffs are not entitled to such equitable relief. The complaint against Sheraton should, therefore, be dismissed in its entirety on the ground that no cause of action is stated against it.
By parity of reasoning, the complaint should' be dismissed against Talcott to the extent that rescission of the lease is sought. Ordinarily, when plaintiffs seek both money damages and equitable relief — as these plaintiffs have against Talcott — the courts will not entertain a motion to dismiss solely that portion of the complaint which asks for the equitable remedy. (See Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84.) As we noted in the Advance Music case (296 N. Y. 79, 84, supra), a motion to dismiss the complaint will not search out the nature of the relief or judgment to which a plaintiff may be entitled. The application will be denied if the complaint ‘ ‘ states a case for relief either at law or in equity.” However, in the case before us, the equitable relief sought against Talcott — rescission— coincides and is intimately bound up with the relief sought from Sheraton, to which the plaintiffs are not entitled. Under the circumstances, it would be pointless to reserve decision whether such equitable relief is obtainable against Talcott.
The order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

. Additional limited partners have joined in the aetion since the amended complaint was filed to bring the total number of plaintiffs to 215 and the amount of their aggregate investment to more than $850,000.

. On the other hand, it is no impediment to a suit for money damages on behalf of all limited partners that some of them might feel they had not been injured. This represents merely a difference of opinion over whether the defendants are guilty of wrongdoing and a money judgment in favor of all limited partners as a class could not, of course, prejudice the interests of any members of the class. (Cf. Chance v. Superior Ct., 58 Cal. 2d 275, 288-292.)