OPINION OF THE COURT
Edward J. McLaughlin, J.
The court is called upon to decide whether a general part *464 ner may ever be convicted of stealing funds held by a limited partnership.
Philip W. Zinke, the. sole general partner[1] of the SIN I Limited Partnership, was convicted after a jury trial of two counts of grand larceny in the third degree (Penal Law § 155.35) for embezzling $1,050,000 in mid-1984 from SIN I.
At the end of the People’s case and again at the close of the entire evidence, defendant moved for trial orders of dismissal (CPL 290.10 [1]). The court reserved decision (People v Brown, 40 NY2d 381) on whether a distinction should be made in the analysis of intrapartnership thefts between ordinary partnerships (see, Partnership Law §§ 1-82) and limited partnerships (Partnership Law §§ 90 — 1204).
New York long ago adopted the rule that "a partner who appropriates partnership property is not guilty of larceny from his co-partners” (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 155.00, at 104). The rationale is that "[s]ince one who holds a joint or common interest in property does not have an interest therein superior to that of another joint or common owner * * * one cannot legally ‘steal’ from the other” (ibid., citing People v Hart, 114 App Div 9; People v Dudley, 97 NYS2d 358, and People v Dye, 134 Misc 689).
Under each theory of larceny in New York, no theft is committed unless the taking, obtaining, or withholding of the property of another person is from the owner of the property (Penal Law § 155.05 [1]). An owner means any person who has a right to possession superior to that of the taker, obtainer, or withholder (Penal Law § 155.00 [5]). The term “person” includes a partnership (Penal Law § 10.00 [7]). No joint or common owner of property has a right of possession superior to that of any other joint or common owner (Penal Law § 155.00 [5]). In sum, copartners have co-ownership interests, and one cannot steal his own property (People v O’Brien, 102 Misc 2d 246 [one party to joint bank account cannot criminally misappropriate funds]).
Differing theories have been employed to give substance to the argument, persuasive on public policy grounds, that it is both illogical and unreasonable to say that ordinary partners cannot steal from one another simply because they have *465 undivided interests in partnership assets. After all, "stealing that portion of the partners’ shares which does not belong to the thief is no different from stealing the property of any other person” (Annotation, Embezzlement or Larceny by a Partner, 82 ALR3d 822, 828).
But most of those States that allow partners to be prosecuted for embezzlement do so based on larceny statutes that differ from those promulgated in New York (see, e.g., California [People v Sobiek, 30 Cal App 3d 458, 106 Cal Rptr 519 (Ct App, 1st Dist 1973), cert denied 414 US 855; People v Mellor, 161 Cal App 3d 32, 207 Cal Rptr 383 (Ct App, 4th Dist 1984)] and New Jersey [State v Sasso, 20 NJ Super 158, 89 A2d 489 (1950)]; see, Annotation, 82 ALR3d 822, 832-839).
The court holds, however, that the common-law rule in virtue of which a partner cannot be found guilty of embezzling partnership property (see generally, Annotation, 82 ALR3d 822, 829-832) should not insulate general partners in a limited partnership from criminal liability in New York. Three related but independent grounds compel the court’s conclusion.
First, the balance of powers, rights, and liabilities between a general partner and a limited partner is so unequal that the two partners do not necessarily share that indivisible communality of interest that is the hallmark of co-ownership. For instance, whereas ordinary partners "have equal rights in the management and conduct of the partnership business” (Partnership Law §40 [5]), the limited liability itself of a limited partner (Partnership Law § 106) is contingent upon his or her lack of control of the business (Partnership Law §96; e.g., Sloan v Clark, 18 NY2d 570).
Interference with management decisions or commercial transactions with third parties is wholly inconsistent with the dormant role of limited partners, whose lack of liability is premised on lack of knowledge, capacity to shape events, and ability to contain wrongdoing (cf., Lichtyger v Franchard Corp., 18 NY2d 528, 537-538). A limited partner, accordingly, has but few rights, such as the right akin to a corporate shareholder to sue derivatively (Partnership Law § 115-a), that a general partner does not have, and the consequence is disparity of status rather than equality.
On the other hand, the management of the partnership property and the business of the firm are vested exclusively in the hands of the general partner (Partnership Law § 98; e.g., Durant v Abendroth, 97 NY 132). As the instant limited *466 partnership agreement authorized,[2] Zinke, the general partner, had the sole discretion to control and decide virtually everything of relevance to the partnership, including what the name of the partnership should be (art 1.01), where its office should be located (art 1.02), whether to admit additional limited partners (art 4.04), under what circumstances to "retire” a limited partner (art 5.01) and whether to postpone the payment of liquidated shares (art 5.08), and what investments consistent with the purpose of the partnership should be made (art 2.01) — including permissible self-dealing between Zinke and SIN I (art 2.01 [b]; see, Riviera Congress Assocs. v Yassky, 18 NY2d 540, 548) — to name but a few general partnership powers.
It is beyond cavil that an unscrupulous general partner can take advantage of a limited partner. Because the former is so "responsible” for the latter’s contribution that the latter loses direct control over his investment, "a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners” (Riviera Congress Assocs. v Yassky, supra, at 547). The general partner must retain a standard of behavior upholding "the punctillio of an honor the most sensitive” (Meinhard v Salmon, 249 NY 458, 464). "A breach of this fiduciary duty adversely affects in the same way the interests of every investor who has no voice in the operations of the business” (Lichtyger v Franchard Corp., supra, at 536-537), those being the limited partners. The limited partner, who often stands to profit from his silent investment, is nonetheless on such a different and unequal footing from a general partner that one cannot denominate the two as co-owners at all.
The more appropriate analogy, and the one that accounts for the court’s second reason in upholding Zinke’s conviction, is that a limited partnership is more a corporate entity than a jointly held general partnership. It has been held numerous times, for example, that a limited partner should be equated to a corporate shareholder since both are investors who have limited liability and authority (see, e.g., Lichtyger v Franchard Corp., supra, at 536; Leibert v Clapp, 13 NY2d 313; Ruzicka v Rager, 305 NY 191, 197-198; Lanier v Bowdoin, 282 NY 32, 38, rearg denied 282 NY 611; Matter of Brandt, 81 AD2d 268, 279- *467 282; Strain v Seven Hills Assocs., 75 AD2d 360, 365). The Federal courts, describing New York’s limited partnership law, also view limited partners as the functional and juridical equivalent of shareholders (Klebanow v New York Produce Exch., 344 F3d 294, 297).
Similarly, "the fiduciary duty to fair dealing owed by a general partner to a limited partner is no less than that owed by a corporate director to a shareholder” (Miller v Schweickart, 405 F Supp 366, 369, citing Riviera Congress Assocs. v Yassky, supra, at 547). As the Court of Appeals held in Lichtyger, "[t]here is no basis or warrant for distinguishing the fiduciary relationship of corporate director and shareholder from that of general partner and limited partner. The principle is the same — those in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form” (Lichtyger v Franchard Corp, supra, at 536). Just as a director or even a majority shareholder is criminally responsible for a larceny from the corporation (see, e.g., People v Barnes, 158 App Div 712, appeal dismissed 210 NY 612), so is a general partner.
The third ground on which the court denies defendant’s trial orders of dismissal is that a limited partnership, just as a corporation, is an "entity” unto itself whose formation, composition, and powers go beyond the "aggregate of individuals” who comprise an ordinary partnership. Were a partner to embezzle from a limited partnership, he or she consequently would not take, obtain, or withhold property from a joint or common owner (Penal Law § 155.00 [5]), because a limited partnership is "another person” (see, Penal Law § 10.00 [7]) separate and distinct from its members.
The entity theory of partnerships is the one used by the State of Louisiana to prosecute partners for the crime of embezzlement (State v Morales, 256 La 940, 240 So 2d 714 [1970]; see, Annotation, 82 ALR3d 822, 839-840). Granted, New York has never adopted in toto the civil law concept that a partnership is a juristic entity. To the contrary, ordinary partners as they relate to one another and, possibly, limited partners vis-a-vis other limited partners are co-owners as common-law tenants in partnership (see, e.g., Rossmoore v Commissioner of Internal Revenue, 76 F2d 520, 521). The distinction lies in the nature of the limited partnership, whose very existence stems from the civil law societ en commandite (Ames v Downing, 1 Bradf 321) and whose outlines were *468 adopted in New York substantially from French civil law in 1822 (Moorhead v Seymour, 77 NYS 1050; see, annotations following Partnership Law § 91, McKinney’s Cons Laws of NY, Book 38, at 131).
That a limited partnership is a legal entity endowed with a fictional personality separate and apart from its equity holders is buttressed by those cases which hold that, for one purpose or another, and particularly with regard to pleadings, "a partnership is to be regarded as a legal entity” and not an aggregate (Ruzicka v Rager, supra, at 197) because a partnership "may sue or be sued in the partnership name” (CPLR 1025).
In conclusion, the court holds that the unique characteristics of limited partnerships in terms of (1) the relationship between general partners and limited partners, (2) their kinship with corporate directors and shareholders, and (3) the distinct legal entity such a partnership creates mandate the ruling that a general partner is accountable under the criminal law for any embezzlement from a limited partnership.

. At the commencement of the partnership, Zinke held an equity interest in the partnership in lieu of making an initial contribution.

. The agreement contemplates that it shall be governed by Delaware law, a common-law sister State. In the absence of evidence to the contrary, the limited partnership law of Delaware is presumed to be the same as New York’s (Strain v Seven Hills Assocs., 75 AD2d 360, 363).