Jeffrey T. STRAUSS, derivatively
on behalf of SERVICO,
INC., Plaintiff,

v.

AMERICAN HOLDINGS, INC.,
et al., Defendants.

95 Civ. 1740 (LAK).

United States District Court,
S.D. New York.

Nov. 2, 1995.

Paul D. Wexler, Bragar & Wexler, P.C., Glenn F. Ostrager, Ostrager Chong & Flaherty, New York City, for plaintiff.

Marshall H. Fishman, Jennifer A. Coen, Rosenman & Colin, New York City, for defendants.

KAPLAN, District Judge.

Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), U.S.C. § 78p, requires the disgorgement of trading profits made within a six month period by beneficial owners of more than ten percent of the securities of the issuer of the traded security. This case presents novel issues concerning this aspect of the statute. The matter is before the Court on defendants' motion to dismiss the complaint.

## Facts

The case concerns trading in the shares of Servico, Inc. ("Servico") in 1993 by American Holdings, Inc. ("Amhold") and Shamrock Associates ("Shamrock"). Paul O. Koether is the president and chief executive officer of Amhold and the sole general partner of Shamrock. Plaintiff's thesis is that Koether, who allegedly controls both Amhold and Shamrock, and those two entities together constitute a "group" for Section 16 purposes and that the share holdings of each therefore are attributable to the others in determining their obligations under the statute. Before proceeding to those matters, however, it is useful to set forth the facts concerning the trading in order to focus precisely on the issues that must be decided.

According to a Schedule 13D and amendments filed on behalf of Amhold and, in some instances, Shamrock, Amhold began accumulating a position in the common stock of Servico on May 13, 1993, and made its last purchase on October 20, 1993. Beginning on November 29, 1993, it proceeded to sell shares periodically, liquidating its entire position on December 6, 1993. Amhold made no purchases after October 20 and no sales prior to November 29.

Shamrock too was active during this period. On July 19, 1993, while Amhold still was accumulating shares, Shamrock purchased 40,000 shares. It made no purchases other than on July 19. Shamrock began selling on August 30, 1993 and completely disposed of its position on November 12, 1993.

The percentage of Servico's securities held by Amhold and Shamrock at particular points obviously is central to this case in view of the ten percent threshold. Determination of those percentages, however, requires resolution of two preliminary questions.

The first is a dispute concerning the number of Servico shares that were outstanding. The complaint alleges that the total was 6,536,230 throughout the period. (Cpt ¶ 7) Defendants, relying on Servico's Annual Report on Form 10–K for the transition period ended December 31, 1992, say that the correct figure is 7 million. (Fishman Aff. Ex. A, at F–4) Servico's Quarterly Reports on Form 10–Q for the periods ending June 30 and September 30, 1993, however, state the figure as 6,536,230 on the cover sheets and as 7,037,526 in the balance sheets. (*Id.* Exs. C, D) As the Court is not aware of any statute or regulation making any of these figures conclusive for Section 16 purposes (*compare* 17 C.F.R. § 240.13d–1(e)), it adopts for purposes of this motion the view most favorable to the plaintiff, which is 6,536,230.

The second problem stems from an inaccuracy in the amendments to the Schedule 13D. The Schedule 13D itself was dated June 28, 1993. It reported a total holding of 598,468 shares and listed in Exhibit C each date of purchase, the number of shares purchased on that date, and the price per share. The sum of the shares listed in Exhibit C reconciled to the 598,468 shares reported as the total holding. Amendment No. 1, dated July 20, 1993, reported a total holding (for both Amhold and Shamrock) of 640,968 shares, which also reconciled to the listing of purchases in Exhibit C, the last of which reportedly took place on July 19, 1993. Amendment No. 2, dated October 21, 1993, reported a total holding of 725,000 shares. So far so good. The Exhibit C listing of purchases by date, however, did not reconcile to the total reported in Amendment No. 2, which is 20,173 shares higher than the sum of (a) the total reported in Amendment No. 1 and (b) the purchases listed in Exhibit C to Amendment No. 2. Inasmuch as (a) all changes in the total holding reported in subsequent amendments to Schedule 13D reconciled with the Exhibit C

schedules of purchases and sales by date of transaction, and (b) only a total holding as of Amendment No. 2 of 725,000 is consistent with the number of shares subsequently sold,[1] it is readily apparent that Amhold, at some time between July 20 and October 21, 1993, purchased 20,173 shares which are reflected in the total holding shown on Amendment No. 2, but not in the schedule of purchases by date. As the Court is obliged to view the allegations in the light most favorable to the plaintiff and to draw all reasonable inferences in his favor, the Court assumes for purposes of deciding this motion that Amhold purchased 20,173 shares of Servico on July 20, 1993.

Having resolved these preliminaries, the relevant transactions assumed for purposes of this motion are set out in the following table:

**TRADING IN SHARES OF SERVICO, INC. BY AMHOLD AND SHAMROCK**
(assumes 6,536,230 shares outstanding)

| | Amhold | | | Shamrock | | | Combined | |
| | | Cumulative Holding | | | Cumulative Holding | | Cumulative Holding | |
| Date | Purchased (Sold) | Shares | Percent | Purchased (Sold) | Shares | Percent | Shares | Percent |
|---|---|---|---|---|---|---|---|---|
| 5/13/93 | 5,300 | 5,300 | 0.08% | | | | 5,300 | 0.08% |
| 5/14/93 | 1,700 | 7,000 | 0.11% | | | | 7,000 | 0.11% |
| 5/21/93 | 12,100 | 19,100 | 0.29% | | | | 19,100 | 0.29% |
| 5/24/93 | 2,100 | 21,200 | 0.32% | | | | 21,200 | 0.32% |
| 5/28/93 | 110,000 | 131,200 | 2.01% | | | | 131,200 | 2.01% |
| 6/1/93 | 7,000 | 138,200 | 2.11% | | | | 138,200 | 2.11% |
| 6/7/93 | 2,000 | 140,200 | 2.14% | | | | 140,200 | 2.14% |
| 6/8/93 | 131,656 | 271,856 | 4.16% | | | | 271,856 | 4.16% |
| 6/15/93 | 19,500 | 291,356 | 4.46% | | | | 291,356 | 4.46% |
| 6/17/93 | 289,312 | 580,668 | 8.88% | | | | 580,668 | 8.88% |
| 6/18/93 | 3,400 | 584,068 | 8.94% | | | | 584,068 | 8.94% |
| 6/22/93 | 5,900 | 589,968 | 9.03% | | | | 589,968 | 9.03% |
| 6/25/93 | 8,500 | 598,468 | 9.16% | | | | 598,468 | 9.16% |
| 6/28/93 | 4,000 | 602,468 | 9.22% | | | | 602,468 | 9.22% |
| 7/7/93 | 5,000 | 607,468 | 9.29% | | | | 607,468 | 9.29% |
| 7/9/93 | 1,500 | 608,968 | 9.32% | | | | 608,968 | 9.32% |
| 7/16/93 | 15,000 | 623,968 | 9.55% | | | | 623,968 | 9.55% |
| 7/19/93 | 17,000 | 640,968 | 9.81% | 40,000 | 40,000 | 0.61% | 680,968 | 10.42% |
| *7/20/93 | 20,173 | 661,141 | 10.12% | | 40,000 | 0.61% | 701,141 | 10.73% |
| 8/30/93 | | 661,141 | 10.12% | ( 3,200) | 36,800 | 0.56% | 697,941 | 10.68% |
| 8/31/93 | | 661,141 | 10.12% | ( 4,400) | 32,400 | 0.50% | 693,541 | 10.61% |
| 9/2/93 | | 661,141 | 10.12% | ( 2,400) | 30,000 | 0.46% | 691,141 | 10.57% |
| 9/3/93 | | 661,141 | 10.12% | ( 7,500) | 22,500 | 0.34% | 683,641 | 10.46% |
| 9/7/93 | | 661,141 | 10.12% | ( 1,000) | 21,500 | 0.33% | 682,641 | 10.44% |
| 9/10/93 | | 661,141 | 10.12% | ( 1,500) | 20,000 | 0.31% | 681,141 | 10.42% |
| 9/16/93 | | 661,141 | 10.12% | ( 1,500) | 18,500 | 0.28% | 679,641 | 10.40% |
| 9/17/93 | | 661,141 | 10.12% | ( 4,900) | 13,600 | 0.21% | 674,741 | 10.32% |
| 9/28/93 | 8,859 | 670,000 | 10.25% | | 13,600 | 0.21% | 683,600 | 10.46% |
| 9/30/93 | 25,900 | 695,900 | 10.65% | | 13,600 | 0.21% | 709,500 | 10.85% |
| 10/1/93 | 1,000 | 696,900 | 10.66% | | 13,600 | 0.21% | 710,500 | 10.87% |
| 10/4/93 | 3,100 | 700,000 | 10.71% | | 13,600 | 0.21% | 713,600 | 10.92% |
| 10/5/93 | 5,000 | 705,000 | 10.79% | | 13,600 | 0.21% | 718,600 | 10.99% |
| 10/15/93 | | 705,000 | 10.79% | ( 3,600) | 10,000 | 0.15% | 715,000 | 10.94% |
| 10/20/93 | 20,000 | 725,000 | 11.09% | | 10,000 | 0.15% | 735,000 | 11.25% |
| 10/28/93 | | 725,000 | 11.09% | ( 9,000) | 1,000 | 0.02% | 726,000 | 11.11% |
| 11/12/93 | | 725,000 | 11.09% | ( 1,000) | — | 0.00% | 725,000 | 11.09% |
| 11/29/93 | ( 35,100) | 689,900 | 10.56% | | — | 0.00% | 689,900 | 10.56% |
| 11/30/93 | ( 63,100) | 626,800 | 9.59% | | — | 0.00% | 626,800 | 9.59% |
| 12/1/93 | ( 17,900) | 608,900 | 9.32% | | — | 0.00% | 608,900 | 9.32% |
| 12/2/93 | ( 4,700) | 604,200 | 9.24% | | — | 0.00% | 604,200 | 9.24% |
| 12/3/93 | ( 61,600) | 542,600 | 8.30% | | — | 0.00% | 542,600 | 8.30% |
| 12/6/93 | (542,600) | — | 0.00% | | — | 0.00% | — | 0.00% |

As the table demonstrates, the alleged group, and therefore each of its members, became the beneficial owner of more than ten percent of Servico's shares on July 19, 1993.

1. That is, unless that figure is correct, Amhold sold more shares than it bought.

Even without regard to the alleged existence of a group, Amhold became the beneficial owner of more than ten percent of the common stock of Servico at some point on July 20, 1993.

### Discussion

Section 16(a) of the Exchange Act provides that any person who, among other things, is the beneficial owner of more than ten percent of any class of registered equity security must file monthly reports of his or her ownership of such securities. 15 U.S.C. § 78p(a). Section 16(b) then states in pertinent part:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner ... by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer ..." *Id.* § 78p(b).

As the text suggests, the statute embodies a prophylactic rule, the object of which is to remove any incentive for insider dealing within a six month period by requiring the disgorgement of any profit thus made without regard to whether the beneficial owner in fact possessed or abused inside information. *See, e.g., Foremost–McKesson, Inc. v. Provident Securities Co.,* 423 U.S. 232, 243–44, 96 S.Ct. 508, 515–16, 46 L.Ed.2d 464 (1976); *C.R.A. Realty Corp. v. Crotty,* 878 F.2d 562, 565 (2d Cir.1989).

In 1991, the Securities and Exchange Commission amended Rule 16a–1, 17 C.F.R. § 240.16a–1 (1994), to broaden the definition of "beneficial owner." The amended rule, however, employs different definitions for the purposes of determining status as a ten percent holder and the obligations to report and to disgorge profits, respectively. Rule 16a–1(a)(1), which controls the determination of ten percent status, provides, in relevant part:

"Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the [Exchange] Act, the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act ..."

Rule 16a–1(a)(2), which controls the reporting and disgorgement obligations, on the other hand, provides in relevant part:

"Other than for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered under section 12 of the Act, the term *beneficial owner* shall mean any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities, subject to the following:

"(I) The term *pecuniary interest* in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities.

"(ii) The term *indirect pecuniary interest* in any class of equity securities shall include, but not be limited to:

\* \* \* \* \* \*

"(B) A general partner's proportionate interest in the portfolio securities held by a general or limited partnership....

"(iii) A shareholder shall not be deemed to have a pecuniary interest in the portfolio securities held by a corporation or similar entity in which the person owns securities if the shareholder is not a controlling shareholder of the entity and does not have or share investment control over the entity's portfolio." (Emphasis in original)

Thus, the defendants all were ten percent beneficial owners of the shares of Servico beginning on July 19, 1993 if they were part of a Section 13(d) group with respect to Servico shares. Even in that event, however, there can be no liability unless the particular defendant at issue had a direct or indirect pecuniary interest in the shares.

### The "Group" Issue

Defendants' principal argument in seeking dismissal is that the complaint does not sufficiently allege the existence of a group and, accordingly, that it fails to state a claim upon

which relief may be granted.[2] The argument proceeds from the premise that the complaint alleges no more than the existence of common control by Koether over Amhold and Shamrock and that this is not enough to state a cause of action.

Rule 13d–5(b)(1), 17 C.F.R. § 240.13d–5(b)(1) (1994), provides in pertinent part:

> "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons."

Thus, the question posed here is whether this complaint sufficiently alleges that Amhold and Shamrock "agree[d] to act together for the purpose of acquiring, holding, voting or disposing of equity securities of" Servico.

Defendants' attack on the sufficiency of the complaint rests heavily on the proposition that the complaint alleges only that Amhold and Shamrock were under the common control of Koether. They rely on cases such as *Management Assistance Inc. v. Edelman*, 584 F.Supp. 1016, 1019 (S.D.N.Y.1984), and *Bayly Corp. v. Marantette*, 1982 WL 1337 (D.D.C.1982), for the principles that (a) there is no Section 13(d) group absent an agreement to act "for a common purpose to acquire, hold, vote or dispose of" the issuer's securities and (b) other relationships do not establish the requisite agreement. They contend that the complaint's characterization of the defendants as a "group" is a legal conclusion that need not be accepted as true on this motion because it is unsupported by facts.

Were the complaint as barren as defendants suggest, there would be much force to their argument. They are correct in asserting that the "group" characterization, were it unsupported by specific facts, would be the sort of legal conclusion that need not be accepted as true for purposes of this motion. *See, e.g., Neubauer v. Eva–Health USA, Inc.*, 158 F.R.D. 281, 284–85 (S.D.N.Y.1994) (bare allegation of "control" insufficient to state claim under Sections 15 and 20 of the Securities Act of 1933 and the Exchange Act, respectively). Nor would an allegation of common control, standing alone, suffice to give rise to an inference of the agreement that is essential to the existence of a Section 13(d) group. Entities under common control, particularly given the expansive definition of "control" contained in the federal securities laws, nevertheless may act independently and warrant treatment as distinct juridical bodies.[3] But this complaint is not quite as devoid of factual content as the defendants would have it.

In determining whether the complaint states a claim upon which relief may be granted, all of the factual allegations are taken as true, and the plaintiff is entitled to the benefit of all inferences that reasonably may be drawn from the facts pleaded. The complaint here alleges that Koether is the president and chief executive officer of Amhold and the sole general partner of Shamrock. It therefore is entirely reasonable to infer from the complaint that Koether, as president and chief executive officer of Amhold, was aware of and directed—at least in matters of broad policy—Amhold's dealings in Servico shares. The complaint alleges also that he is the sole general partner of Shamrock. As only the general partners of limited partnerships, such as Shamrock, may participate in management of partnership affairs,[4] the Court must conclude for purposes of this motion that Shamrock's transactions occurred at Koether's direction. The question, at this pleading stage, thus resolves itself to this: where a complaint alleges that a corporation and a partnership both traded

---

**2.** Defendants rely on the fact that Shamrock, in Amendment No. 1 to the Schedule 13D, disclaimed any intention of acting in a group with Amhold with respect to Servico securities.

**3.** *See generally* IV Louis Loss & Joel Seligman, Securities Regulation c. 5 (3d ed. 1990).

**4.** *E.g., Lichtyger v. Franchard Corp.*, 18 N.Y.2d 528, 535, 277 N.Y.S.2d 377, 383, 223 N.E.2d 869, 875 (1966); *Matter of Goldman, Sachs & Co. v. Michael*, 113 A.D.2d 326, 329, 496 N.Y.S.2d 427, 429 (1st Dept.1985).

in the shares of a third entity, and the complaint permits the inference that the same individual was responsible for the trading activities of both, is the pleading susceptible of the inference that the entities are a Section 13(d) group with respect to dealings in the securities of the third entity?

Other courts, in other contexts, have wrestled with the superficially analogous question whether different entities under common control, or sharing the same decision maker, are capable of conspiring or in fact conspired. *See, e.g., Knutson v. Daily Review, Inc.,* 548 F.2d 795, 801–03 & n. 4 (9th Cir.1976), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); *America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc.,* 347 F.Supp. 328, 331–32 (N.D.Ind.1972); *Windsor Theatre Co. v. Walbrook Amusement Co.,* 94 F.Supp. 388. (D.Md.1950), *aff'd,* 189 F.2d 797 (4th Cir.1951). But the question posed here is best addressed in terms of the policies underlying Section 16(b) of the Exchange Act.

Section 16(b) recognizes that corporate insiders and those with substantial (i.e., greater than ten percent) share holdings may have access to inside information and may abuse that access by dealing in the securities of the corporation. *E.g., Foremost–McKesson, Inc.,* 423 U.S. at 243, 96 S.Ct. at 515. The statute is intended to remove all economic incentive to engage in such activities by requiring the disgorgement to the corporation of any profit made by such dealings within any six month period. *Id.* at 243–44, 96 S.Ct. at 515–16. Moreover, in cases where the Act is susceptible of alternative constructions, courts should adopt that which best serves the congressional purpose. *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 424, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972).

Corporations typically regard particular shareholders as important to their affairs in direct proportion to the size of their holdings. In viewing their shareholder bodies, moreover, they typically are concerned principally with those who make the decisions to buy, sell and vote their shares as distinguished from the names that may appear on accounts in which record or beneficial ownership is held. It seems quite probable that the access of a shareholder to corporate information would be a function of the actual or prospective size of the holding controlled as a practical matter by the individual. It therefore seems reasonable, all other things being equal, to infer that a company in Servico's position would look at Koether, Amhold and Shamrock as a unit without pausing over the niceties of how the shares controlled by Koether happen to be held. Accordingly, the policy of Section 16(b) suggests that this complaint, given Koether's alleged positions in Amhold and Shamrock, should be sustained.

The Court of course is mindful of the fact that Rule 13d–5 requires an agreement to act together with respect to Servico's securities. But that requirement is no obstacle to this conclusion. Amhold and Shamrock, two different entities, are capable as a matter of law of forming an agreement. *E.g., General Electric Co. v. Bucyrus–Erie Co.,* 563 F.Supp. 970, 976 n. 3 (S.D.N.Y.1983); *but cf. Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (parent and wholly-owned subsidiary incapable of Sherman Act conspiracy). Given the factual allegations regarding Koether's role, the complaint permits the inference that Amhold, through its president and chief executive officer, formed an agreement with Shamrock, through its sole general partner, to act together with respect to the securities of Servico. *See, e.g., Wellman v. Dickinson,* 682 F.2d 355, 362–63 (2d Cir. 1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983) (informal agreement suffices); *America's Best Cinema Corp.,* 347 F.Supp. at 331–32 (agreement involving common officer of two entities). In consequence, defendants' contention that the complaint fails to allege the agreement necessary to the existence of a Section 13(d) group is rejected. Whether plaintiff can prove his allegations of course remains to be seen.[5]

---

5. Defendants argue also that the trading of Amhold and Shamrock refutes the suggestion that they acted pursuant to an agreement, and thus that they constituted a group, because they "did

*Pecuniary Interest*

Although the Court concludes that all three defendants must be regarded as ten percent holders of Servico shares by virtue of Rule 16a–1, defendants nevertheless argue that the complaint fails to state a claim upon which relief may be granted because it does not allege the pecuniary interest of each defendant in each of the transactions at issue.

Defendants are correct in arguing that even a member of a Section 13(d) group which, in the aggregate, is a ten percent holder is not liable under Section 16(b) with respect to a transaction unless that member holds a pecuniary interest in the shares involved. As the SEC put it in amending Rule 16a–1:

> "[W]hile securities holdings of group members may subject the group members to section 16, if the group member does not have or share a pecuniary interest in securities held by other group members, the transactions of the other group members do not create section 16 obligations for that member." Securities Exchange Act Rel. No. 34–28869, 56 Fed.Reg. 7242, 7245 (Feb. 21, 1991).

But that does not get defendants all the way home.

*Koether*

 While there is no allegation that Koether dealt in Servico shares himself, he is the sole general partner of Shamrock and is deemed to have had an indirect pecuniary interest in the Servico shares dealt in by Shamrock by virtue of Rule 16a–1(a)(2)(I) and (ii)(B). The question whether he is deemed to have had a pecuniary interest in the shares dealt in by Amhold is not quite as clear cut, but the Court reaches the same conclusion. Rule 16a–1(a)(2)(iii), quoted above, creates what the Commission has described as "[a] non-exclusive safe harbor governing beneficial ownership of portfolio securities held by a corporation," 56 Fed.Reg. at

7245, which provides in substance that corporate ownership of securities is not imputed to a stockholder who neither controls the corporation nor has investment control over the corporation's portfolio. Here it is conceded that Koether controlled Amhold, and the allegations concerning his role in the corporation are sufficient to permit the inference that he had investment control over its portfolio. While the Court recognizes that the failure to come within a "safe harbor" does not *ipso facto* mean that a defendant is lost at sea, the policies of Section 16 warrant the conclusion that the complaint sufficiently alleges facts from which an inference of pecuniary interest in Amhold's trades might be drawn with respect to Koether.

*Amhold*

There is no suggestion that Amhold had a pecuniary interest in the shares purchased and sold by Shamrock. In consequence, it may be liable for short-swing profits only on its own purchases and sales within the statutory six month period.

The table demonstrates that, on the view of the allegations most favorable to the plaintiff, Amhold became the beneficial owner of more than ten percent of the stock of Servico at some point on July 19, 1993. It then made additional purchases on July 20 and in the period September 28 through October 20 followed by sales aggregating 725,000 shares during the period November 29 through December 6, 1993. Accordingly, there is no basis for dismissal of the complaint as against Amhold.

*Shamrock*

The case as to Shamrock is slightly more complex. There is no suggestion that Shamrock had a pecuniary interest in any of the transactions made by Amhold. In consequence, its liability stands or falls on its own purchases and sales.

The only purchases and sales pertinent here are purchases made after and sales made when Shamrock was the holder of

---

not make Servico transactions on the same dates, of the same types, or in the same quantities ..." (Def.Br. 12) The inconsistency of their respective trading patterns, defendants claim, "belies any common pattern or purpose in the trading of

Servico shares ..." (*Id.* 15) As the complaint must be construed and all reasonable inferences drawn in plaintiff's favor on this motion, these contentions must be rejected at this stage.

more than ten percent of Servico's shares. *Foremost–McKesson, Inc.*, 423 U.S. at 249–50, 96 S.Ct. at 518–19; *Reliance Electric Co.*, 404 U.S. at 419–20, 92 S.Ct. at 597–98, 30 L.Ed.2d 575 (1972); *Herrmann on behalf of Walt Disney Productions v. Steinberg*, 812 F.2d 63, 64 (2d Cir.1987). Inasmuch as Shamrock's July 19, 1993 purchase of 40,000 shares was the event that increased the aggregate holdings of the alleged group to more than ten percent, it appears at first blush that that transaction is not subject to Section 16(b) and, as Shamrock made no other purchases, that there were no purchases in which Shamrock had a pecuniary interest during the relevant period against which to match its sales. This view, however, assumes that Shamrock bought all 40,000 shares in a single transaction, which of course is not necessarily the case.[6] If Shamrock made more than one purchase on July 19, it is possible that the second or any subsequent purchases were made after Shamrock had become the beneficial owner of more than ten percent of Servico's outstanding shares. *Piano Remittance Corp. v. Reliance Financial Services Corp.*, 618 F.Supp. 414, 418 (S.D.N.Y.1985); see *Schaffer v. Soros*, No. 92 Civ. 1233 (LMM), 1994 WL 381442, at *8–*9 (S.D.N.Y. July 20, 1994). As the Court may not dismiss this complaint unless plaintiff can prove no facts under its allegations that would entitle him to prevail,[7] the complaint cannot now be dismissed against Shamrock.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss the complaint is denied.

SO ORDERED.

---

6. The complaint alleges that Shamrock joined in Amendment No. 1 to the Schedule 13D "reporting *a purchase* of 40,000 shares." (Cpt ¶ 8) (emphasis added) While this language in other circumstances might well be taken as inconsistent with multiple purchases, and thus warrant dismissal as to Shamrock, this would be inappropriate here. The complaint makes clear that it relied on Amendment No. 1 for the information in question. The Amendment does not state that there was only a single purchase, although of course that may prove to be the case. In these circumstances, it would be inappropriate to saddle plaintiff with the complaint's characterization of the ambiguous filing upon which it was based.

7. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).